# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HAROLD WERKHEISER

    Plaintiff-,

v.

POCONO TOWNSHIP,

    Defendant-.

No. 16-cv-0015

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is a Motion for Summary Judgment (Doc. 15) filed by Defendant Pocono Township ("Defendant" or "Township"). Plaintiff Harold Werkheiser ("Plaintiff" or "Werkheiser") asserts a First Amendment retaliation claim under 42 U.S.C. § 1983 against Defendant for allegedly failing to continue his employment with the Township following its transition to a first-class township in January 2014, in retaliation for his filing of another retaliation lawsuit in 2013. In moving for summary judgment, Defendant asserts that Plaintiff has failed to establish that the Township is liable for the relevant decisions or actions, and that even if he has, he has failed to establish a prima facie case that the Township's actions constitute retaliation. Because Plaintiff has raised a genuine issue of material fact as to whether Defendant terminated him in retaliation for exercising his First Amendment rights, Defendant's motion for summary judgment will be denied.

## I. Background

The facts presented in the summary judgment record, viewed in the light most favorable to Plaintiff, are as follows. Plaintiff was elected in 2007 to serve a six-year term on the Board of Supervisors of Pocono Township in Monroe County, Pennsylvania. (Doc. 1-1 (Plaintiff's 2013 Amended Complaint ("2013 Complaint")) at ¶¶ 2-3.) The Township was at the time a second-class township governed by the three-member Board of Supervisors. (Doc. 1 ("Complaint") at ¶4.)  During part of Plaintiff's tenure, Frank Hess ("Hess") and Henry Bengel ("Bengel") also served on the Board of Supervisors. (Doc. 1-1 at ¶4.)

Township Supervisors are permitted to hold separate positions of employment with the Township. (*Id.* at ¶ 6.) In 2008, Plaintiff was appointed Township Roadmaster and was reappointed to this position every year thereafter until 2013. (Doc. 1 at ¶¶ 7, 9.) According to Plaintiff, his duties as Roadmaster included supervising "all the activities of the Township Road Department and the Township Parks and Recreation Department, including, but not limited to, maintenance, repair and construction of Township roads, parks and recreational facilities and grounds, and regular maintenance of roads, parks, and recreation equipment and tools." (*Id.* at ¶ 8.) Recently, the position has also been called Director of Public Works. (*Id.*) Since Plaintiff had served on the road crew for several years prior to being appointed Roadmaster, the union provided him a memorandum of understanding stating that he could return to the road crew at the same seniority level he had when he left. (Doc. 15-1 at 46:4-47:16; Doc. 15-2, Ex. 5.) Plaintiff testified that this letter was additionally intended to ensure that he could return to employment with the road crew at a later date, although there is nothing specifically stating this in the document. (Doc. 15-1 at 47:3-16.)

In January 2012, Hess, who was a Supervisor at the time, became temporarily disabled and took leave during which Frank Froio ("Froio") took over his duties. (Doc. 1-1 at ¶ 12.) Despite opposition by Plaintiff, Froio was subsequently hired by the Township upon motion by Bengel and second by Hess. (*Id.* at ¶ 14.) As Froio's position developed, Hess' responsibilities and workload decreased while his compensation remained roughly the same. (*Id.* at ¶¶ 15.) Plaintiff voiced his objection to the cost to the Township of this arrangement, among other things. (*Id.* at ¶ 16.)

According to the 2013 Complaint, because Plaintiff continued to voice his objections, in December 2012, Hess and Bengel decided not to reappoint Plaintiff as Roadmaster for the year 2013, and appointed Bengel instead. (*Id.* at ¶¶ 14-18; Doc. 1 at ¶ 16.) As a result of that decision, on February 4, 2013, Plaintiff commenced an action in Pennsylvania state court (the "Hess/Bengel action"). (Doc. 1 at ¶ 17.) Defendants removed the action to federal court, and Plaintiff subsequently filed an amended Complaint asserting a claim for First Amendment retaliation and a state law claim under the Second Class Township Code and Pennsylvania

2

Sunshine Law (the 2013 Complaint). (*Id.* at ¶¶ 19-20). On September 28, 2016, this Court granted summary judgment for the Defendants in that action on Plaintiff's First Amendment claim and dismissed Plaintiff's state law claims without prejudice. *Werkheiser v. Pocono Twp.*, 210 F.Supp.3d 633 (M.D.Pa. 2016).

In or about March 2013, Bengel resigned as roadmaster. (Doc. 15-1 at 25:20-26:3.) At that time, Plaintiff held the position of Assistant Secretary/Treasurer in addition to his office as Supervisor. (Doc. 1, ¶ 15.) The Roadmaster position was not immediately filled, and Plaintiff unofficially resumed coverage of Roadmaster duties at the request of Hess, who said Plaintiff was "the best candidate." (Doc. 15-1 at 26:10-27:9.) Plaintiff did not receive additional compensation for these added duties, but agreed to take over "[b]ecause someone had to do it." (Doc. 15-1 at 26:24-27:7.)

Plaintiff was still performing the Roadmaster duties in November 2013, when he was re-elected Supervisor. (Doc. 1, ¶ 23.) However, in the same election, voters simultaneously approved a referendum to become a first-class township, changing the Township's governing body to a five-member Board of Commissioners. *Id.* On December 19, 2013, the judges of the Monroe County Court of Common Pleas appointed five Commissioners[1] to a term of two years. (*Id.* at ¶ 24.) At a meeting on January 6, 2014, the five appointed Commissioners took office. (Doc. 1, ¶ 27.) At the same meeting, Plaintiff asked during public comment about the status of his job as Assistant Secretary/Treasurer. (Doc. 15-2 at 92:1-3.) There is some debate between the parties as to the exact wording of the response Plaintiff received from Commissioners Wielebinski and/or Lastowski. Plaintiff testified he was told the Commissioners "need[ed] legal advice pending [Plaintiff's] lawsuit," while Defendants observe that the meeting minutes simply state "Gerry Lastowski and Rich Wielebinski stated the board would seek legal advice on the matter of Harold Werkheiser's employment with the township." (Doc. 15-2 at 104:20-24; Doc. 15-2, Ex. 4.) Commissioner Wise testified that his

---

[1] The appointed Commissioners were Thomas E. Felver ("Felver"), Greg J. Hill ("Hill"), Gerald J. Lastowski ("Lastowski"), Richard P. Wielebinski ("Wielebinski"), and Bradley A. Wise ("Wise"); collectively, "Commissioners." (Doc. 1, ¶ 24.)

3

"recollection was that [Plaintiff] wasn't appointed to anything because there was a lawsuit throughout my term." (Doc. 22 at 27:24-28:1.) In addition, either Commissioner Wielebinski, Commissioner Lastowski, or both stated at the meeting that the position of Assistant Secretary/Treasurer no longer existed because of the change to a first-class Township. (Doc. 15-2 at 107:8-12; Doc. 15-2, Ex. 4.) Plaintiff testified that none of the other three Commissioners spoke regarding his position at the meeting. (Doc. 15-2 at 105:14-20.) Commissioners Lastowski, Wielebinski, and Wise each testified that they believed Plaintiff's position as Assistant Secretary/Treasurer was eliminated by the vote to change to a first-class township. (Doc. 22 at 33:6-13; Doc. 22-1 at 46:21-47:19; Doc. 15-3 at 32:6-14.)

The parties do not dispute that the Commissioners had the authority to create an Assistant Secretary position at any time, though Defendants correctly point out that they were not required to do so. Defendants further note that the Pennsylvania statute authorizing the creation of a Deputy Treasurer position appears to be conditioned on the Treasurer's inability "to perform the duties of office or [failure] to appoint a deputy treasurer."[2] In addition, 53 P.S. § 56503 grants the Township the broad power "[t]o create any office, position or department which may be deemed necessary for the good government and interests of the township; and to fix the compensation of persons appointed thereto."

Plaintiff did not inquire further about his position following the January 6 meeting "[b]ecause it was already in the legal system." (Doc. 15-2 at 109:11-20, 111:14-24.) The minutes of the January 16, 2014, Commissioners' special meeting show that the Commissioners selected counsel for the Township on that date. (Doc. 15-2, Ex. 7.) Following their selection of counsel, the Commissioners did not take any action to ascertain Plaintiff's prospects at continued employment with the Township, or to inquire as to what Plaintiff's

---

[2] *See* 53 P.S. § 55901.1: "Every board of township commissioners may, by resolution, appoint an assistant secretary who shall, in the absence or disability of the secretary, perform the duties and exercise the powers of the secretary;" *see also* 53 P.S. § 55801-A(c): "When the township treasurer is unable to perform the duties of office or fails to appoint a deputy treasurer, the board of township commissioners may appoint a deputy treasurer to serve until the treasurer is again able to perform the duties of his office."

4

duties had been while he was employed. (Doc. 15-2 at 114:25-115:13; Doc. 15-3 at 50:5-52:3.) Plaintiff testified the position of Assistant Secretary/Treasurer currently does not exist in the Township, and that he did not recall appointing anyone or suggesting the position be created during his term as Commissioner. (Doc. 15-2 at 63:16-65:13.)[3]

## II. Procedural History

Plaintiff filed the Complaint in this action on January 5, 2016. (Doc. 1.) On May 17, 2017, Defendant filed the instant Motion for Summary Judgment. (Doc. 15.) Plaintiff filed his Answer on June 23, 2017 (Doc. 20) and Defendant filed its Reply on July 7, 2017. (Doc. 24.) This motion is therefore now ripe for disposition.

## III. Discussion

### A. Legal Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Wright v. Corning*, 679 F.3d 101, 105 (3d Cir. 2012) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). An issue is "genuine" if the evidence is such that a reasonable jury could find in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Id.* at 248.

When considering whether there are genuine issues of material fact, a court is required to "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476

---

[3] Although Defendant introduced facts relating to the Township's subsequent failure to hire Plaintiff for the Director of Public Works position, Plaintiff has denied these assertions as immaterial to the case at hand. The Court will therefore assume, consistent with Plaintiff's Complaint and Response to Defendant's statement of facts, that Plaintiff makes no claim as to these later events, and will not consider them as evidence of retaliation against Plaintiff.

5

F.3d 180, 184 (3d Cir. 2007). The standard for summary judgment is not whether a plaintiff would prevail at trial, but whether the Defendant has proven that no issues of material dispute exist. *Anderson*, 477 U.S. at 248. The Court must disregard all evidence favorable to the moving party that a jury is not required to believe. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000).

Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to prevail on a motion for summary judgment, the non-moving party must show "specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). Although the non-moving party's evidence may be either direct or circumstantial, and "'need not be as great as a preponderance, the evidence must be more than a scintilla.'" *Id*. (quoting *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)).

**B. Analysis**

The First Amendment to the United States Constitution provides, *inter alia*, that "Congress shall make no law [] abridging the freedom of speech." U.S. Const. amend. I. In some cases, the First Amendment protects public employees from retaliation by their employer.

Werkheiser asserts his First Amendment retaliation claim under 42 U.S.C. § 1983. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage [] subjects, or causes to be subjected, any citizen [] or other person [] to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. "To establish liability under

6

42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)).

*1. The Township's Liability*

"When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or formally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. Dep't of Soc. Servs. of New York City*, 436 U.S. 658 (1978)); *see also LaVerdure v. City of Montgomery*, 324 F.3d 123, 125 (3d Cir. 2003) ("Municipalities and other bodies of local government [] are liable under § 1983 only if they have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.") (internal quotation and citation removed). If a legislative body requires a majority vote to establish policy, the actions of individual members of that body do not constitute municipal policy. *LaVerdure*, 324 F.3d at 125 (finding statements from the chairman of a municipal Board of Commissioners were not municipal policy because the chairman lacked final policymaking authority without a majority of the Board). A municipality "cannot be deemed to have engaged in a constitutional violation by virtue of a policy [or] a custom" in the absence of a "conscious decision or deliberate indifference of some natural person." *Simmons v. City of Phila.*, 947 F.2d 1042, 1063 (3d Cir. 1991)."[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate conduct*, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original). Ultimately, in order to hold a municipality liable under § 1983 for actions taken by a decision-making body, a plaintiff must demonstrate that a majority of the body's members acted with an impermissible motive. *Watson v. Borough of Susquehanna*, 532 Fed.App'x. 233, 236 (3d Cir. 2003).

7

Government entities may be liable for officials' failure to confer a benefit on a plaintiff, even where the benefit is entirely within the officials' discretion and the plaintiff has no right to receive it, so long as the failure to confer the benefit is based on impermissible reasons. *See Koontz v. St. Johns River Water Management Dist.*, 133 S.Ct. 2586, 2594 (2013) (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-284 (1977) (finding a teacher's First Amendment retaliation claim against a school district for non-renewal of his contract was not defeated by the fact that he did not have tenure and he "could have been discharged for no reason whatever, and had no constitutional right to a hearing prior to the decision not to rehire him.").

Here, the Commissioners were granted the discretion under state law to create a position for Plaintiff in the new first-class Township. *See* 53 P.S. § 55901.1; 53 P.S. § 55801-A(c); and 53 P.S. § 56503, *supra*. Although Plaintiff has offered no evidence of a public vote of the Commissioners opting not to create the position for him, he did offer evidence that Commissioner Wise thought Plaintiff's lawsuit was the reason he was not appointed to any new position, and that the Commissioners discussed in executive session whether his employment should be an agenda item at the January 6, 2014, meeting. (Doc. 15-2 at 104:20-24; Doc. 22 at 39:14-22, 42:16-43:3.) If the Commissioners discussed whether Plaintiff's employment should be an agenda item, and Plaintiff's employment was not in fact discussed as an agenda item at the meeting, it would be reasonable for a jury to infer that a majority of the Commissioners concluded it should not be discussed. Further, a jury could reasonably infer from Commissioner Wise's recollection that the Commissioners made the decision not to create a position for Plaintiff, as opposed to simply failing to create one as a result of inertia: the Commissioner recalled that Plaintiff was not appointed to anything *because* of his lawsuit. Therefore, interpreting these facts in the light most favorable to Plaintiff, a reasonable jury could find that the Commissioners deliberately failed to act on Plaintiff's request that he be reinstated or reappointed on a temporary basis, and the Township could therefore be liable for this failure to act if Plaintiff shows the inaction was retaliatory.

### 2. First Amendment Retaliation

In some cases, the First Amendment protects public employees from retaliation by their employer. The Third Circuit has articulated a three-step test to evaluate whether public employees may sue to enforce their First Amendment rights under 42 U.S.C. § 1983. *See Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001); *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993). First, a plaintiff must show that his conduct was constitutionally protected. *Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 493 (3d Cir. 2002) (citing *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996)). Second, a plaintiff must show that the protected activity was a "substantial factor" in the alleged retaliatory action. *Mt. Healthy*, 429 U.S. at 287. Third, the employer may defeat the employee's claim by showing that it would have taken the same adverse action in the absence of the protected conduct. *Ambrose*, 303 F.3d at 493. The first part of the test, whether the activity was protected by the First Amendment, is a question of law for the court, whereas the second and third parts are typically factual questions for the jury. *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).

Defendants do not contest that Plaintiff established the first element of his case, i.e. that he engaged in protected activity by filing the Hess/Bengel action, and it is well established that the filing of a lawsuit constitutes protected activity. *See Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997) (citing *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972)). The Court will therefore evaluate only the second and third elements of Plaintiff's prima facie case.

#### a. Causation

In establishing causation, or the "substantial or motivating element," a plaintiff need not show that the protected conduct was the sole, dominant, or primary reason for the defendant's action. *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)). Rather, a plaintiff is simply required to show that the decision was motivated *in part* by the activity. *Id.* In order to constitute retaliation under the second prong, the action must be sufficient to deter a person

of ordinary firmness from exercising his First Amendment rights. *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). Although, as discussed above, officials' decision not to rehire an employee may be an act that subjects a municipality to liability, this act alone does not create an inference of discrimination. *See Blakney v. City of Phila.*, 559 Fed.App'x.183 (3d Cir. 2014) (employer's decisions to ignore plaintiff's reinstatement requests and fill the position with someone else were "neutral acts that do not create an inference of antagonism.").

Plaintiff has offered numerous examples of evidence, with varying degrees of significance, which he believes support a finding of retaliation, but the dispositive piece of evidence at the summary judgment stage is Commissioner Wise's statement that he thought Plaintiff "wasn't appointed to anything because there was a lawsuit throughout [Commissioner Wise's] term." (Doc. 22 at 27:24-28:1.) This statement constitutes direct evidence of causation and creates a fact issue for the jury to decide.

Further, "the Third Circuit recognizes 'that the loss of employment opportunities may qualify' as a retaliatory action 'sufficient to deter a person of ordinary firmness from exercising his constitutional rights.'" *See Marin v. Schmider*, 2015 WL 5882271, at *3 (M.D.Pa. Sept. 30, 2015) (citing *Mack v. Yost*, 427 Fed.App'x. 70, 73 (3d Cir. 2011)). In *Marin*, the Court found that the plaintiff's allegation of the defendant's refusal to direct the processing of the plaintiff's application and refusal to lift the "hold" on the application constituted retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Similarly, in the case at hand, Plaintiff has introduced evidence that Defendant placed his employment opportunities with the Township on a sort of "hold" while the Hess/Bengel action was pending: Commissioner Wise testified that he thought Plaintiff was not appointed to anything "because there was a lawsuit *throughout [Commissioner Wise's] term*." (Doc. 22 at 27:24-28:1.) The threat of indefinite suspension of employment opportunities during the pendency of a lawsuit is sufficient to deter a person of ordinary firmness from engaging in constitutionally protected First Amendment activity. Plaintiff has therefore met the second prong of the *Mt. Healthy* test.

*b. Defendant's Burden*

Finally, Defendant has not met its burden of showing that the Township would have failed to create a position for Plaintiff even in the absence of Plaintiff's protected conduct. The *Mt. Healthy* test requires Defendant to show, by a preponderance of the evidence, that the Township would have reached the same decision in the absence of Plaintiff's protected conduct. *See Mt. Healthy*, 429 U.S. at 287. Defendant offered evidence that Hess, who was serving both as a Supervisor and the Secretary/Treasurer at the time of the transition to a first-class township, was not continued in his position. (Doc. 17, ¶ 22.) Plaintiff does not deny this,[4] but has offered further evidence of other non-union employees who were retained in their positions through the transition. (Doc. 20, ¶ 21.) Further, Plaintiff testified that the position of Secretary/Treasurer exists in a first-class Township, and that it had been filled by someone other than Hess, suggesting that the Commissioners may have had other reasons for not continuing Hess in the position beyond the transition to first-class Township. Though a jury may well find Defendant's argument on this point persuasive, the record contains insufficient evidence to conclude at this stage that Defendant has met its burden by a preponderance of the evidence, especially in light of Commissioner Wise's statement that Plaintiff's lawsuit was the reason no position was created for him. This case should therefore be resolved at trial.

### IV. Conclusion

For the above stated reasons, Defendant's motion for summary judgment is denied. An appropriate order follows.

| January 23, 2018 | /s/ A. Richard Caputo |
|---|---|
| Date | A. Richard Caputo |
| | United States District Judge |

---

[4] Although Plaintiff states that Defendant's assertion of fact in ¶ 22 is "denied," Plaintiff states in his explanation that "Mr. Hess, no longer a Supervisor because of the change from Second to First-Class Township, was not continued as Secretary/Treasurer." (Doc. 20, ¶ 22.)

11